This is a test. I was just thinking, but I have no idea where it is, and I was wondering about that. Okay, here we go. What's that? Is that one? We started the test, and then... Did you start the test? I started the test. I thought we did. Did you start the test? Did you start the test? Okay. Testing podium, 1, 2, 3. Testing, testing, Judge Meadey, 1, 2, 3. Testing, testing, Judge Schwartz, Well, if the collateral is, as the bankruptcy court found, and as we argue, a general and tangible, a right to payment right, a right to a monetary payment, then the proceeds of that payment are the funds that are paid, are the other side of the funds when they're paid in connection with the city's right to receive those payments. How do you reconcile that with the definition that, in the indenture, that the revenue, that what's payable or to be received is the revenue? Isn't that different than the right to receive revenue? Because one conveys it's been payable or it's been received, and the other is the right to get something that was earmarked for the city under the statutes that were put into play concerning the various proceeds. If you say they're the same, then how could that be the collateral? How could it be also the proceeds? Your Honor, the UCC, which governs personal property attachment and perfection, doesn't require any magical words in order for it to be effective or operative, so it doesn't have to use the precise language of right to receive. It doesn't even have to say precisely that it is identified as a payment intangible. But when we look at the language and we see that the city did pledge to the bond parties, revenue is payable, too, we believe that that is clearly a right to receive those payables. But the word right to receive is written one place in the indenture. It's not in the finance statement where the financing statement talks about what's payable or to be received. How is one on notice about what's securing that collateral for your client's interest if the language it can't be relied on and you can say it could be read as both? Your Honor, I think that the financing statement is clear. We're also talking about revenue streams that are pledged. They're pledged revenues, which is a defined term. We think that the bankruptcy court erred and the city makes an argument that doesn't hold up when they talk about pledged revenues as being the collateral but also the proceeds. It's an operationally defined term under the indenture and under the ordinance. We believe that that term encapsulates the right to receive those payments, payments when made and when received. The intent, we think, is clear in both documents, the indenture and the ordinance, that the city is intending to pledge and the bond parties are intending to receive as consideration for loaning millions of dollars. These payment streams, these general intangibles, these payment rights going forward. You keep calling them general intangibles, but you also started your conversation by saying these are payment intangibles. Are they different? Your Honor, under the UCC, and I'll try to clean up my references just so that I don't create any confusion on my part or others, the definition of a general intangible under the UCC includes a payment intangible. It's a specie of general intangible. Back to my question, what is the difference between the collateral in this case and the so-called proceeds, which you claim survives 552A? Yeah, so under the UCC, every specie, every variety of collateral has proceeds associated with it. Is that true? Every type of collateral does? Yeah. The definition of collateral. If the collateral were my car, how could that also be the proceeds? Well, the collateral of your car, if you sell the car, the proceeds that you would receive in the sale are the monies you receive for the disposition of the car are the proceeds of that collateral. Only if I gave you an interest, a security interest in the proceeds, right? If you're offering. But if you're not, right? Right. So you can't really say the collateral and the proceeds are necessarily always captured by the same thing. They have to be clearly identified, correct? That's correct, Your Honor. And I was making the point that for every variety of collateral that is identified under the Uniform Commercial Code, Article 9 of the Pennsylvania Commercial Code, the definition of proceeds broadly encompasses any payments, any proceeds, any products, any funds associated with the disposition of that collateral. Right. Okay. So if the collateral in this case are the revenues, how could the revenues also be the proceeds? Well, Your Honor, that's sort of the catch-22 in that the collateral here, if the bankruptcy court correctly found, is really a right to payment. These revenues prospective that will come in over time that are being pledged, the city's right to receive those payments from Harris, from Covanta, are being pledged and collaterally signed to the trustee. And when those payments arrive at the city's door, those payments are the proceeds of the city's right to receive those proceeds. And that's essentially what is meant by an intangible. You know, it's a right that arises under a contract or an agreement that is associated with a payment stream, but not the monies themselves. And is it because the language of the indenture has the right to receive, the right to the city's interest in the revenues, does that make your situation different than the county's? Your Honor, I don't believe so. They don't have anything about rights to receive, rights in the revenues in their consideration, do they? Well, Your Honor, you know, counsel for the county will speak to their specific language. I would say that from a legal standpoint, to the extent that it's clear that they also have a right in pledged revenues, and we believe that that term is operationally defined, memorializes an understanding or expectation that it is a right to payments that will come in over time, that they may also hold the same right in a general intangible, pledge of a general intangible that the bond parties do. Or maybe you hold something that they don't hold. That's also a possibility. All right. So I thought that was where Judge Schwartz was going, was that the banks get all of the rights, title, and interest of the city, and into the pledged revenues where contribution agreement says something different. It says it grants to the county a security interest in and to all such revenues. That is different language. It is different language, Your Honor. The right party, all of the right language in the trust indenture, that has no independent legal significance? I believe it does. I believe it does. But what we're really trying to do, I guess, Your Honor, and once again, counsel for the county is probably in a better position than I am to address this particular point. I think the language is important, vitally important, and I'll just leave it at that. Okay. One other area, we talked about proceeds. One other area we'd like to address is the bond party statutory lien argument. Federal Support Section 101-53 defines the term statutory lien as, quote, a lien arising solely by force of the statute on specified circumstances and conditions. Section 6 of the ordinance gives rise to a statutory lien on the pledged revenues. It states as follows. The city hereby, in the way that they did, pledges the pledged revenues for the payment of the principal of a lien if they meet an interest on loans. We think that's significant. The city hereby, in this provision, in this ordinance, unambiguously pledges. Section 6-17 lien may be granted or may be created by Section 17. Section 17 is the contrast. Section 17 is a provision which authorizes the city to enter into a trust indenture, which is what's contemplated under the Debt Act. That creates the precursor for a contractual security interest as defined in the bankruptcy claim. And so, I'm kidding, brother, because it is very common in municipal plaintiffs for homeowners to negotiate and receive two liens for the price of one. And this is a case where the new ordinance can grant a statutory lien to those. It is a lien that is created solely by force of the statute. Section 6 doesn't rely upon an indenture or a negotiation indenture. And then the separate Section 17 of the ordinance, which contemplates the price, can also grant that the homeowners will also have a contractual, they'll be memorialized and done by the city for a life in a trust indenture. And more than that, two separate liens. In those two provisions, the lien would make the general guess as to whether you can look at it, and also, as it is stated in the Bankruptcy Claimant's Decision, describe that those two provisions do indeed include liability support laws and also would like to be made available under Section 6, where the ordinance says the lien is hereby and validably pledged. Section 17 says that the lien is a self-advising use of a trust indenture which bears the contractual significance. Thank you. Thank you. Thank you. I would like to address some of the audience questions about the council's interest in the definition of I would like to address some of the audience questions about the council's interest in the definition of the definition of ownership. The definition of ownership states that the owner has the requisites for the claimant and has been established to account for these quotas. It is defined as the office shall receive under the union act. Later in the contribution agreement, it refers to the status of the owner's hands in the director's seat and later in the financing statement, it refers to the status of the claimant and claims to the owner. Thank you. Your Honor, the county is primarily relying on bond parties for the legal argument of that portion. We've stated that in our briefs, but I think just briefly, it's clear that the lien can be granted, is granted. I mean, just the language of the 2009 ordinance says that the city irrevocably pledges. Now, the fact that there is a separate agreement, a contract between the city and the county subsequent to the lien that has been established statutorily, that does not just shape the statutory lien. The statutory lien attaches them to the debt that the contribution agreement establishes. Does our case law provide where you can either have a statutory lien, a judicial lien, or an agreement, a consensual lien, a security agreement? Your Honor, we've addressed that in briefs with bond parties primarily. We think there's good case law for that that is not the controlling case law here that parties can have. The distinction referenced in the legislative history and elsewhere is the lien must be one type, but that does not mean that a party is precluded from holding two liens of different types in the same collateral. Good afternoon, Your Honors. May it please the Court, Matthew Adam, Associate Attorney General for Appellee District of Chester. Briefly, this dispute concerns who will get more than $22 million in revenues due to the City of Chester in its bankruptcy, namely the employees and retirees or the bondholders who are represented by counsel today. And just to make it clear, if my numbers are correct, about $15 million of that money would go to the bondholders of Creston Hollow and about $7 million would go to Delaware County. And there are two issues here. One is the 552A of the Bankruptcy Code issue and the excess in accrued funds. Just so the Court knows, the excess in accrued funds is about $2.8 million, and then the balance of $19 turns on the 552A issue. And I just want to jump to the questions Your Honors asked because I think those are critical. On the proceeds issue, I think the key question, which you didn't hear an answer from the appellants on, is what is the pre-petition property that the appellants, the trustee, had a lien on that the post-petition-fledged revenues are a proceeds of? And remember, under Section 552B-1, in order for that exception to 552A to apply, you have to have basically three things. There's a pre-petition security agreement, which extends the property that the debtor acquired before the petition was filed and also extends the proceeds. And then there has to be post-petition proceeds of that collateral. And the critical thing that's missing here, Your Honors, is the pre-petition collateral. Well, they didn't have a lien on it. There's no pre-petition collateral that the appellants had a lien on that the post-petition-fledged revenues are proceeds of, and here's why. The revenues don't exist until gambling happens at the Harrah's Casino or trash is incinerated at Covanta. There's no revenues at all, and they can't have a... It doesn't matter whether the language in the indenture situation is an interest in the right of the city in the fledged revenues or if it's payable or received. It doesn't matter from your point of view because it's too speculative, kind of hearkening to the First Circuit. Well, I think that's an important point, Your Honor. First of all, I think you're right. Oh, sure, sorry. It's too speculative in that it's contingent on a number of different participants, like the casino needs to operate. It still needs to have a Certificate or a License. You've got to have gamblers. You've got to have gamblers who lose so there are revenues. Right. Too speculative, too uncertain. Is that part of your argument or is it something else? So I agree with the first part that it doesn't really turn on the language of the document. I think I agree with the intent of your point, Your Honor, but I think asking whether it's too speculative or too indefinite isn't the right question. I think it either exists or doesn't. There may be gambling that happens. There may be heroes may close. But until that happens, there's no collateral or property that exists, that's the preposition collateral, that the trustee could have a lien on. There just simply isn't anything. So the fact that someone has a right to something the city would have by virtue of a state statute is valueless until dollars actually come to life? I don't think so. I don't think it's valueless. It obviously has a value, but it's not property. There's a property right that the city gains when gambling happens or trash is incinerated. And the other thing I'd note, Your Honor, is that under the Local Government Unit Debt Act, it's very specific about what a municipality can grant a lien on. It's revenues, rent, accounts, a couple of other things. It doesn't say that the municipality can grant a lien on contract rights. It doesn't say we can't. That's your ultra-virus argument, right? That's correct, Your Honor. That we can't. Right, correct. And so, for example, there's the Harrah's Additional Consideration Contract, which is one of the sources of the revenues that are the pledged revenues. First of all, the indenture of the ordinances, the contribution agreement, doesn't say anything about granting a lien on that contract. It talks about the revenues to be received pursuant to that contract, but also they couldn't grant that in any case because of the Local Government Unit Debt Act. What collateral, then, did the city promise to these lenders? So the collateral was the revenues to be received by the city pursuant to the Gaming Act or the contract with Covant or the contract with Harrah's. And I agree that most of that is not property that existed when they signed that bond, but the lien on revenues to be received by is there to ensure that, assuming there's no bankruptcy and nothing else happens, they just continue operating, then when that property comes into existence, i.e. when trash is incinerated or gambling happens at the Harrah's Casino, at that point the lien would attach to that property and then payments of those revenues in cash into the trustee would be proceeds. So, for example, we have this issue of the accrued revenues, which was money due. The bankruptcy, I think, was filed November 10, 2022. So there was revenues due for gambling that happened in October that hadn't been paid yet. So that, I would agree, is prepetition collateral that their lien would attach to and then the proceeds when it gets paid to the city after the bankruptcy was filed, their lien would attach to those proceeds. But it's only where the gambling or the incineration happened before the bankruptcy was filed. Well, proceeds is a kind of collateral. Proceeds is what you get from disposing of collateral in some fashion. Apply it in this case. If the collateral is the revenue from the pledged revenues. Right. So the cash paid by the state gaming fund or Harrah's or Covanta is proceeds of the revenues. If that's the case, then why don't they prevail on the proceeds point? Because it's only proceeds. So in order for them to prevail on the proceeds point, there has to be prepetition collateral that they receive postpetition proceeds of. And the only collateral that's true of is the accrued funds, the about $1.5 million, which is from gaming that happened in October of 2022 or cash incinerated in 2022 before the bankruptcy was filed but then was paid. But that was all paid in December and January of 2022 and 2023. That money is long dealt with. The key point is money they're getting now, for example, is proceeds of revenues, but it's revenues from gambling or incineration that happened a month or two ago after the petition date. In order for the exception under 522B1 to apply, there would have to be revenues generated prepetition where the proceeds are paid postpetition. So I understand that argument that you're making as to the contribution agreement, but I'm still not sure I follow it as to the trust indenture because of the difference in the language, and this is something we were asking your colleagues on the other side earlier. If your argument and I understand it is that the city is giving to the county security interest to the revenues, right? Well, that didn't exist under your argument prior to the bankruptcy petition. But the trust indenture says security interest take all of the right to the revenues. Right. Let's start with that's broader, right? That's got to be a broader interest. I think there could be ways it's broader. I can't think of anything that's... What's the point of this language then that you guys negotiated? What was the point of this? I think banks negotiate documents and try to get as much collateral as they can, but I think... Counsel, you guys signed this too. Come on. It's not like you're not a sophisticated entity. I'm not saying it needs to be read against them. I don't think this meant that, because as I'm reading it, I'm wondering if it's not significant, because if it is all of the right to the revenues, well, that's potentially a little bit different on that side, right? Because then that could say, well, there was something that existed at the time the agreement was made in anticipation of the revenues that would come later. If it's not then, then you still have your determinancy problem, which I understand, and your speculative problem, I get that. But is it really the same agreement? I think effectively it is, because there's no right to receive those revenues until the predicate acts happen, the gambling or the incineration of waste. Effectively, I understand the difference in the language. I just can't come up with an example of what would fall within right to receive revenues in this situation versus revenues to be whatever the language is from the contribution agreement. If I may, I want to turn briefly to the statutory lien issue. And I think really there are a couple of arguments we made, and I'll rely on the briefs for most of them, but I want to focus on that solely language. Again, in order for it to be a statutory lien, it has to revise solely by force of a statute. And we have arguments in our briefs why the ordinances don't count as statutes here. But critically, there's not just the ordinance, as you noted. There's in one case an ordinance and a contribution agreement, and in the other case the ordinance and the indenture. And they cover the same. It's not disputed, I think, that they cover the same property in terms of the collateral. And I would submit they only create one lien. Mr. Coco, my colleague, talked about the section, tried to draw a distinction between Section 6 and Section 17 of the indenture and noted that Section 17 authorizes the city to enter into the indenture. But I think it's important to recognize two things about Section 17. First of all, it says it authorizes the city to enter into an indenture under which the bonds shall be issued and secured. So it's in the ordinance recognizing that the indenture provides for collateral security. And second of all, there's the next sentence, which says the mayor or the deputy mayor shall execute the indenture. So this is not an authorization that the city can do or not. Section 17 directs the city to enter into the indenture. I would submit inseparable from the ordinance. And I think the same applies for the contribution agreement and the 2009 ordinance, if you look at that. The following ordinances on their face require the execution of other documents for the security interest. Correct. Correct. And also I'd note two other things, Your Honors. If you look at the UCC-1 financing statements for the documents, the one for the 2017 bond financing, there's one UCC-1 which references both the indenture and the ordinance as the source of the security, one financing representing both of them. For the county, for the 2009 financing, the UCC-1 only references the contribution agreement. It doesn't reference the ordinance at all. And Mr. Coco Council for Preston Hollow mentioned the timing issue. And I think, Judge Sturkey, your question is exactly right. You have ordinances. We don't dispute that those ordinances were enacted before the indenture was signed, before the contribution agreement was signed. To the extent they gave force to separate liens, those liens didn't have any effect until the indenture was signed and the bonds were funded and issued or the contribution agreement was signed. And I think if you look at the cases, I think it talks about this in UnitedHealthCare, but I'm not sure if that's right. The question on the timing issue is when the lien attaches. And the lien under the ordinance doesn't attach until there's actually a transaction that's happening, when the contribution agreement is signed, when the indenture is signed. We have other issues in our briefs. I can talk about them at length. But unless your honors have any other questions, I will yield the floor. Thank you, Your Honors. May it please the Court. In my two minutes, there are just a couple quick points I'd like to make in reference to other arguments that have been brought forth here today. First is, with regard to the statutory lien issue, the presence of the word solely in the definition of statutory lien, I think the only, I would say, reasonable reading of that language is that the term solely modifies the preceding word arising. A statutory lien is one that arises solely. The fact that it arises solely doesn't lead to the logical conclusion that a creditor can only have a statutory lien or a contractual security interest. You can't have both. It's just that each lien is independent. And if it is going to satisfy the requirements for a statutory lien, it has to arise solely from the statute, which is precisely what we believe Section 6 of the ordinance does. And we cite a myriad of cases, including pointing to some cases that are cited by the city in its papers, that recognize that this is Moya, Lynch, County of Orange, and others that recognize under established law that creditors can hold a statutory lien and a contractual security interest. And the fact that you have both doesn't mean you're left with neither. The point of having both is belt and suspenders from the perspective of a secured creditor. And then also, I'd like to address the proceeds point that Mr. Hamermesh made. His point is that you can't have a security interest in collateral that hasn't arrived yet and is subject to an act of a third party. The argument, I think, is belied by the Uniform Commercial Code itself. The Uniform Commercial Code, on its face, grants a security interest, says its security interest can be granted in after acquired property. That's just what the statute says. And taken to its logical conclusion, if you accepted the city's argument on this, a secured creditor could never have a lien on accounts payable. What if the account debtor doesn't pay? Couldn't have a security interest on inventory. What if nobody shows up at the store and buys it? You really couldn't have proceeds or collateral interest in any type of collateral if you were a purist about saying that, well, it's only secured and it's only collateral that attaches and perfected if a transaction has occurred and money has come in. And if it's dependent on a third party act, you're out of luck. Thank you. Thank you, Your Honor. Good afternoon, again, Your Honors. Two quick points. I'll keep it under 30 minutes. Great. Mr. Hammermesh pointed out that the 2009 ordinance made the argument that the security agreement, the security interest would not have come into existence until the contribution agreement. The 2009 ordinance has no such language. It creates a security interest. It irrevocably pledges, has revenues in the ordinance itself. It's not dependent upon the contribution agreement. I also referenced the financing statement. The financing statement not referencing, his point was the financing statement did not reference the ordinance. It only referenced the contribution agreement. The financing statement is a mechanism to perfect the county's interest. And as I've argued, I think it does have some bearing into the interpretation of what the collateral is. Nevertheless, it did not need to reference the ordinance in order to perfect an interest in the census relief. Thank you, Your Honor. You landed it perfectly. The panel thanks counsel for the briefing and the very helpful argument. We're going to ask that the parties split the cost of getting a transcript of our argument today, and you'll be able to coordinate with our court prior. Otherwise, we'll take the matter under advisory. Thank you.